69 F.3d 549
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Marlon WATSON, Defendant-Appellant
 No. 94-3413.
 United States Court of Appeals, Tenth Circuit.
 Oct. 26, 1995.
 
 Before SEYMOUR, Chief Judge, McKAY and HENRY, Circuit Judges.
 ORDER AND JUDGMENT[1]
 HENRY, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. This cause is therefore ordered submitted without oral argument.
 
 
 2
 Marlon D. Watson appeals his conviction on charges of possession of crack cocaine with intent to distribute, 21 U.S.C. 841(a)(1), and carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. 924(c). He contends that two police officers who gave testimony on his intent to distribute the cocaine lacked sufficient expertise in the area. He also contends that the jury was impermissibly prejudiced by testimony regarding his possession of a pager and an unspecified amount of marijuana. We conclude that the court did not abuse its discretion as to the expert testimony, that testimony regarding the pager was admissible, and that the court's treatment of the inadmissible marijuana testimony was not error.
 
 BACKGROUND
 
 3
 Shortly after midnight on June 9, 1994, Kansas City, Kansas, police officer Robert Lane stopped Marlon D. Watson for driving 50 miles per hour in a 30 mile per hour zone. As Officer Lane approached the car, he saw the barrel of a gun, later identified as a Mac 12 semiautomatic machine pistol, protruding from beneath the driver's seat. Officer Lane arrested Mr. Watson for violating a city ordinance against carrying concealed weapons. During the subsequent search, Lieutenant Michael Harris recovered a pager from Mr. Watson's waistband and a rubber glove, a keyholder, and a 35 millimeter film container from Mr. Watson's jacket. Inside the keyholder and film container was a total of 4.29 grams of crack cocaine in the form of thirteen individually packaged rocks. The police also found an unspecified amount of marijuana in the car.
 
 
 4
 Mr. Watson was indicted on one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. 841(a)(1), and one count of carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. 924(c). Before trial, the government agreed not to introduce the marijuana found in Mr. Watson's car except for impeachment purposes.
 
 
 5
 The government's first witness at trial was Officer Lane, who related the circumstances of the traffic stop and testified from his experience as a police officer that the quantity and packaging of the cocaine indicated that Mr. Watson intended to distribute it. Despite the government's previous promise, Officer Lane also stated on direct examination that marijuana had been found in the car. The government's next witness, Officer Harris, described the circumstances and results of the search. The government's final witness, Detective Martin Cabbinah, also testified from his experience as an undercover officer that the cocaine was intended for distribution.
 
 
 6
 The defense presented Mr. Watson, who testified that the cocaine was not his: he had attended a party that evening and had inadvertently picked up the wrong jacket as he left. He admitted, however, that the rubber glove found inside the jacket did belong to him. He also testified that he had thrown the jacket away before trial. After Mr. Watson's testimony and closing arguments in the case, the jury returned a verdict of guilty on both counts. This appeal follows.
 
 DISCUSSION
 
 7
 Mr. Watson's first contention on appeal is that the court erred in permitting Officer Lane and Lieutenant Cabbinah to testify on the likelihood that the thirteen individually wrapped lumps of crack cocaine were intended for distribution, because neither man had the requisite experience to qualify as an expert under Fed.R.Evid. 702. The determination of whether expert testimony should be admitted rests within the sound discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. United States v. Holsey, 995 F.2d 960, 962 (10th Cir.1993). The court did not abuse its discretion in this case.
 
 
 8
 Mr. Watson relies primarily on dictum from United States v. Franklin, 728 F.2d 994 (8th Cir.1984), suggesting that ten months as a narcotics officer might not be enough experience to become an expert on the size of a dosage unit of powdered cocaine, id. at 998, and that "several years" is normally required for expertise in such areas. Id. at 998 n. 8. In this case, Officer Lane had five years of experience as a policeman, Rec. vol. II, at 17-18, and a year of experience buying crack cocaine as an undercover officer. Id. at 32-33. Detective Cabbinah had at least one year and five months of undercover narcotics experience, during which he made more than one hundred crack purchases, and an additional two years of experience as a gang squad detective. Id. at 54-56. Although there is clearly a level of crack-purchasing experience without which a police officer cannot claim expertise, we decline to establish such a level here, and conclude that in this case the court did not err in admitting the officers' testimony. See United States v. Robinson, 870 F.2d 612, 613 (11th Cir.1989) (per curiam) (finding no abuse of discretion in admission of similar testimony from a police officer with eight months' experience investigating crack cocaine offenses and six years' experience as a police officer).
 
 
 9
 Mr. Watson next contends that the court erred by allowing his pager to be admitted as circumstantial evidence of his intent to distribute cocaine. Since pagers are used for many legitimate purposes, he argues that the admission of his pager was more prejudicial than probative.
 
 
 10
 We review the admission of evidence for abuse of discretion. United States v. Davis, 40 F.3d 1069, 1073 (10th Cir.1994). Although the pager was only circumstantial evidence of Mr. Watson's intent to distribute, it was by no means the only evidence. The same search that yielded the pager also produced a quantity of cocaine and an illegally-carried weapon. In addition, Lieutenant Cabbinah's testimony on the use of pagers in the drug trade provided an adequate foundation for the pager's admission. Mr. Watson's contention that a pager is not "ipso facto" proof of intent to distribute goes to the weight, not the admissibility, of the evidence. We therefore perceive no abuse of discretion in the admission of testimony on the pager.
 
 
 11
 Finally, Mr. Watson contends that the court erred in its handling of Officer Lane's testimony regarding the marijuana found in Mr. Watson's car. The government had agreed before trial not to introduce evidence regarding the marijuana. Rec. vol. II, at 3-4. Nonetheless, in the course of his testimony on the search, Officer Lane divulged the existence of the marijuana. The defendant immediately objected. The objection was sustained, id. at 26, but the court did not at the time instruct the jury to disregard the officer's remarks, and the defense did not request such an instruction. However, the court did instruct the jury at the end of the case that "[a]ny evidence as to which an objection was sustained by the court, ... must be entirely disregarded." Id., doc. 33, Instruction No. 20. Mr. Watson nonetheless argues that the court's failure to instruct the jury immediately was error, and that he is therefore entitled to a new trial.
 
 
 12
 A similar issue arose in United States v. McCary, 14 F.3d 1502 (10th Cir.1994). There the parties agreed that syringes found on the defendant during arrest would not be offered into evidence at his trial on an unrelated firearms charge. A police officer who participated in the search nonetheless mentioned the syringes during his testimony. In affirming the denial of the defendant's motion for a mistrial, we concluded that under the circumstances the inadvertent and fleeting mention of syringes did not require such a drastic remedy. Id. at 1505.
 
 
 13
 Similarly, even if the defense in this case had requested an immediate instruction and been refused, Officer Lane's single mention of the marijuana, although inadmissible by agreement of the parties, was not so prejudicial that a delay in instructing the jury thereon could constitute reversible error. Mr. Watson argues that mention of the marijuana predisposed the jury to believe that he was a drug user, and hence more likely to be involved in narcotics distribution. In light of the other evidence against Mr. Watson, notably the gun, the pager, and the 4.29 grams of crack cocaine found in a jacket that also contained one of Mr. Watson's gloves, it is likely that the mention of marijuana had a minimal effect on this aspect of the trial. We conclude that the district court did not err in its treatment of the inadmissible testimony.
 
 
 14
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order. 151 F.R.D. 470 (10th Cir.1993)