FILED
United States Court of Appeals
Tenth Circuit

December 10, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | No. 08-5184 |
| v. | N.D. of Okla. |
| RENE JOSEPH GORMAN, | (D.C. No. CR-08-147-CVE) |
| Defendant-Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BRISCOE**, and **TYMKOVICH**, Circuit Judges.[**]

In this direct criminal appeal, Rene Joseph Gorman challenges the

sufficiency of the evidence to support his conviction for possession of a firearm

in furtherance of a drug trafficking crime in violation of 18 U.S.C.

§ 924(c)(1)(A)(i). Exercising jurisdiction under 28 U.S.C. § 1291, we find the

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). By the court's Order of October 13, 2009, the cause therefore was ordered to be submitted without oral argument.

government presented sufficient evidence at trial to support Gorman's conviction. We therefore AFFIRM.

## I. BACKGROUND

Acting on information developed in a drug investigation, Tulsa police executed a search warrant at Gorman's residence. During the search, police recovered from the common living area approximately 13 ounces of marijuana, over 11 ounces of which was in "brick" form. On the floor, next to a box containing the brick of marijuana, police found a set of digital scales with marijuana residue on them. Police also recovered various implements for marijuana consumption, including a pipe, a blunt roller, and a potency heightening device.

Near a couch in the living area where the marijuana and drug-related items were located, police found a loaded handgun and a box containing ammunition matching the gun's caliber. The ammunition was found on the floor, next to the marijuana. The handgun was recovered on top of a stereo speaker located at the other end of the couch. Approximately eight feet separated the loaded gun from the drugs.[1]

---

[1] Gorman testified the distance was twelve feet, but we view the evidence in the light most favorable to the government. In any event, it is undisputed that the gun was in the same room as the drugs, and the precise distance does not bear on our analysis.

Gorman was placed under arrest. After being given a *Miranda* warning, he made several statements to police. First, he claimed the marijuana and the gun were his. He also indicated he had obtained the gun to protect himself and his family.[2] He conceded he sometimes sold marijuana to his friends "at cost" but denied being a major distributor. Finally, he admitted he was a convicted felon, and that he knew he was not supposed to have a gun.

The government brought a three-count indictment against Gorman: (1) possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); (2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (3) being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). A jury convicted him on all three counts, and he was sentenced to a total of 101 months of imprisonment—41 months for both counts (1) and (3), to run concurrently, and 60 months for count (2), to run consecutively.

He appeals only his conviction on count (2), arguing that the government did not present sufficient evidence that he possessed the firearm "in furtherance of" a drug trafficking crime.

---

[2] At trial, Gorman testified that a friend had brought the gun to his house the night before the search and had accidentally left it behind when he unexpectedly had to leave.

## II. ANALYSIS

In a sufficiency of the evidence challenge, while we review the evidence de novo, we must view it "in the light most favorable to the Government." *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004). The conviction must be affirmed if a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* We assess "whether [the] evidence, if believed, would establish each element of the crime." *Id.* (quoting *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001)).

To sustain the conviction for possession of a firearm in furtherance of a drug trafficking crime, the government must prove that (1) Gorman possessed a firearm, and (2) this possession was in furtherance of a drug trafficking crime. *See United States v. Poe*, 556 F.3d 1113, 1127 (10th Cir. 2009). On appeal, Gorman does not deny that he possessed the firearm. Our analysis, therefore, focuses only on the second element.

To demonstrate possession of a firearm "in furtherance of" a drug trafficking crime, it is not enough simply to show that a drug trafficker merely possessed a gun. *United States v. Avery*, 295 F.3d 1158, 1180 (10th Cir. 2002) (quoting *United States v. Iiland*, 254 F.3d 1264, 1274 (10th Cir. 2001)). Instead, "a firearm that is kept available for use if needed during a drug transaction, is [only] 'possessed in furtherance of' drug trafficking . . . so long as such possession 'in furtherance of' is the intent of the drug trafficker." *Avery*, 295

F.3d at 1180 (quoting *United States v. Basham*, 268 F.3d 1199, 1208 (10th Cir.

2001)).  Circumstantial evidence may be used to prove intent, and our cases

suggest a number of non-exclusive factors to consider in evaluating the evidence,

including:

> (1) the type of drug activity conducted, (2) the accessibility of the
> firearm, (3) the type of firearm, (4) the legal status of the firearm,
> (5) whether the firearm was loaded, (6) the proximity of the firearm
> to drugs or drug profits, and (7) the time and circumstances under
> which the firearm was found.

*Poe*, 556 F.3d at 1127 (citing *United States v. McCullough*, 457 F.3d 1150, 1170

(10th Cir. 2006)).

Taken together, those factors support the jury's conclusion that Gorman

possessed the firearm in furtherance of a drug trafficking scheme.

First, the jury knew Gorman sold drugs, since he admitted that at the very

least he sold marijuana at cost to friends.  The drug paraphernalia and firearm

suggest ongoing drug activity.

Second, the firearm and ammunition were easily accessible and in close

proximity to illegal drugs.  According to testimony at trial, the gun was "just

setting [*sic*] out in the open on top of the speaker where, if needed, it could be

easily accessed."  The ammunition was on the floor next to the box containing

marijuana.

Third, the gun was a .45 caliber semi-automatic pistol—a type of firearm

that is both powerful and easily concealed.  Our cases confirm that handguns such

as these are common "tools of the trade" among drug traffickers. *See, e.g.*, *United States v. Roach*, 582 F.3d 1192, 1198–99 (10th Cir. 2009) (semi-automatic handgun is an example of "tools of the trade" used to protect drugs); *United States v. Jenkins*, 313 F.3d 549 (10th Cir. 2002) (loaded .45 caliber semi-automatic handgun was possessed in furtherance of a drug trafficking crime).

Fourth, because Gorman had a prior felony conviction, he possessed the gun illegally, which he freely admitted to an officer who executed the search.

Fifth, the gun was loaded—not only with a full magazine, but also chamber-loaded, meaning that it was set to fire as soon as the trigger was pulled. This fact belies Gorman's alibi evidence that the gun was inadvertently left in the home by a friend.

In response to this evidence, Gorman points to our decision in *Iiland* where we reversed an "in furtherance of" conviction because there was "no evidence that the gun and drugs were ever kept in the same place or that [the defendant] ever kept the gun accessible when conducting drug transactions." *Iiland*, 254 F.3d at 1274. But the facts of that case are far different than the evidence we have described here.

Gorman's conduct fits squarely among recent cases where we affirmed convictions. For example, we have upheld convictions where, among other instances, (1) the gun was "easily within reach" of the defendant, *United States v. Robinson*, 435 F.3d 1244, 1251 (10th Cir. 2006), (2) the guns and drugs were

found "within close proximity of one another," *United States v. Garza*, 566 F.3d 1194, 1201 (10th Cir. 2009), and (3) the guns were found inside a "nightstand only five feet" away from a box containing drugs, *United States v. Rogers*, 556 F.3d 1130, 1140 (10th Cir. 2009). Similarly, here, the firearm, ammunition, and drugs were found in the same common living area, with the gun in easy access. The proximity of the gun to the drugs thus lends strong support to the conclusion that Gorman possessed the firearm in furtherance of a drug trafficking offense.

As a final point, Gorman points out that he sold only small amounts to friends "at cost" and was thus not a major distributor of drugs. Nor did the police find quantities of money or baggies associated with packaging drugs. But the jury convicted him on the count of possession with intent to distribute, and obviously could have believed he engaged in more drug activity than he confessed. In any event, even small time drug transactions run the risk of confrontation, and Congress has not carved out an exception to the "possession in furtherance of" statute for friendly or small scale distribution.

### III.  CONCLUSION

Because we find the government presented sufficient evidence for a jury to conclude beyond a reasonable doubt that Gorman possessed a firearm in

furtherance of a drug trafficking crime, we AFFIRM.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge